UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| Pacific West Securities, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Illinois Union Insurance Company, Endurance American Specialty Insurance Company and Does 1 through 20, <br><br> Defendants. | CASE NO. C12-539RSM <br><br> ORDER GRANTING MOTION TO DISMISS |

**I. INTRODUCTION**

Petitioner Pacific West Securities, Inc. ("Pacific"), filed a Petition to Stay Arbitration and Request for Injunctive Relief against Respondents Illinois Union Insurance Company ("ACE"), Endurance American Specialty Insurance Company ("Endurance"), and Does One through Twenty in the Superior Court of King County in the State of Washington. Respondent Endurance removed the action to federal court (with consent of ACE) by invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332. Respondents then filed this Motion to Dismiss Petition to Stay Arbitration pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons set out below, Respondent's Motion is hereby GRANTED.

# II. BACKGROUND

Petitioner Pacific is an investment group who worked with Discovery Resources Development LLC ("Discovery"), an energy corporation working in speculative oil and gas exploration. As the brokers/managers of Discovery security offerings, they recommended Discovery securities to a number of investors. The investors allege that Pacific breached their duty of care by failing to perform due diligence before offering the securities in question, including the failure to investigate, a failure to act on "red flags", and the failure to disclose material facts.

The investors filed a claim with the Financial Industry Regulatory Authority ("FINRA"), claiming violations of (1) fraud and deceit, (2) negligent misrepresentation, (3) negligence, (4) suitability, (5) breach of fiduciary duty, (6) rescission, (7) Corporations Code § 25400 Et. Seq.

Pacific has insurance coverage for such a suit. ACE issued an insurance policy to Pacific that initiated coverage on January 1, 2010. The policy provided coverage for a variety of claims up to $1,000,000, including coverage for suits brought by investors, subject to certain conditions and exclusions. Endurance issued a similar insurance policy to Pacific for the same time period which afforded Pacific coverage for claims that exceeded the policy limits of the ACE plan.

Pacific tendered certain claims related to the Discovery litigation to ACE and Endurance believing they were covered by the policies. On February 9, 2012, the insurers announced that they would seek to avoid covering the claims because they believed certain exclusions applied due to the alleged conduct of Pacific and demanded that Pacific submit to arbitration. Both policies contained arbitration clauses. Pacific did not reply to the request, and the insurers commenced proceedings with the American Arbitration Association.

ORDER GRANTING MOTION TO DISMISS - 2

Pacific then attempted to invoke the "service-of-suit" clause contained in both policies by sending a letter dated March 23, 2012, to the respondents requesting that they submit to the jurisdiction of Washington state courts. Respondents refused that request.

Pacific then filed a Petition to Stay Arbitration and for Injunctive Relief on March 30, 2012, in the Superior Court of King County in the State of Washington. Pacific sought to permanently enjoin the respondents from pursuing arbitration and to force them to resolve the dispute through the Superior Court of King County. The same day, Pacific filed a Motion for Temporary Restraining Order and an Order to Show Cause. The request was denied.

Respondents then filed a Notice of Removal on April 2, 2012, invoked diversity jurisdiction and removed the suit to this Court. On April 17, 2012, respondents filed a Motion to Dismiss Petition to Stay Arbitration pursuant to Fed. R. Civ. P. 12(b)(6). The respondents claim that the arbitration clause is binding and the parties should submit to arbitration before the AAA. The petitioner argues that the "service-of-suit" clause contained in an endorsement is controlling, allows them to choose the jurisdiction, and supersedes the arbitration clause.

### III. DISCUSSION

**A. Jurisdiction**

The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). The amount in controversy exceeds $75,000 and the petitioner is a citizen of the State of Washington while the respondents are citizens of other states.

**B. Relevant Statutes**

The Federal Arbitration Act ("FAA") states

> [a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid,

> irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

The Act continues, saying

> [a] party aggrieved by the alleged . . . refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement . . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

9 U.S.C. § 4.

**C.  Standards of Review**

The respondents invoke Fed. R. Civ. P. 12(b)(6), which allows a party to raise a defense asking the Court to dismiss for "failure to state a claim upon which relief can be granted." It requires the Court to assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from its allegations. *Saunders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). The plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007). If it does so, its complaint survives dismissal as long as there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief. *Id.* at 563; *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009).

**D.  Legal Analysis**

The Court finds that the service-of-suit clauses and arbitration clauses are compatible and can be read in a reasonable way to further the federal and state policies in favor of arbitration. Although the service-of-suit clause is contained in the endorsement, the endorsements are part of

ORDER GRANTING MOTION TO DISMISS - 4

the policy and did not change the terms of the standard agreement. Further, courts construe a contract that contains both an arbitration clause and a service-of-suit clause as resolving the issue of personal jurisdiction to enforce an arbitration award and not as an ambiguity that should be resolved in favor of the insured.

The parties disagree about whether or not the two insurance agreements require them to arbitrate or whether it allows the plaintiff ultimate control of the jurisdiction to resolve a dispute. The plaintiff argues that they were not bound to arbitrate the dispute despite the fact that both insurance contracts contained an arbitration clause[1] because the service-of-suit clause in the endorsements supersede the arbitration clause. They further argue that, even if the service-of-suit clause does not supersede, the clause at least creates an ambiguity in the contract that should be resolved in favor of Pacific. The respondents, on the other hand, urge the Court to dismiss the claim and insist that the two provisions of the contract can be read together to simply provide a judicial avenue to enforce an arbitration award.

The purpose of the FAA is to ensure that private agreements to arbitrate are enforced pursuant to their terms. *AT&T Mobility LLC v. Concepcion*, 563 U.S. ___, ___, 131 S. Ct. 1740, 1748 (2011). The FAA provides the federal courts the power to compel parties to arbitrate if "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue" and requires that "the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Such an agreement is "valid, irrevocable, and enforceable" unless it can be challenged "upon such grounds as exist at

---

[1] The Endurance contract incorporates by reference the arbitration clause from the ACE contract. *See* Dkt. 13, Exh. 1, p. 67 (This Policy incorporates by reference the insuring clauses, warranties, definitions, terms, conditions, exclusions and other provisions contained in the **Primary Policy** . . . .") (emphasis in original).

ORDER GRANTING MOTION TO DISMISS - 5

law or in equity for the revocation of any contract." 9 U.S.C. § 2. When deciding whether a party has agreed to arbitrate, courts generally should apply ordinary state law principles governing formation of contracts. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). However, should state law contravene the federal policy in favor of arbitration, state law is preempted by the FAA. *AT&T*, 563 U.S. at ___, 131 S. Ct. at 1746. Therefore, the question before the Court is whether the insurance contracts can be fairly treated as binding arbitration agreements.

1. <u>Arbitration clauses and service-of-suit clauses are can be harmonized to eliminate conflict, are part of the same policy and do not create an ambiguity</u>

When an arbitration clause and service-of-suit clause are contained in one contract, the two support each other by creating a judicial forum for enforcing arbitration awards. The fact that the service-of-suit clause was contained in an endorsement does not change the outcome. The endorsements are part of the policy and they did not alter the rights of the parties to arbitrate.

a. *Courts have consistently treated a service-of-suit clause as a means to enforce an arbitration award*

Many courts have confronted the issue of "conflicting" arbitration clauses and service-of-suit clauses and have consistently read the two clauses as compatible. Courts treat the service-of-suit clause as resolving the issue of personal jurisdiction for purposes of enforcement of an arbitration award. *See Century Indem. Co. v. Certain Underwriters at Lloyd's, London, subscribing to Retrocessional Agreement Nos. 950548, 950549, 950646*, 584 F.3d 513 (3d Cir. 2009)(stating that the service-of-suit clause does not negate the arbitration clause but instead establishes a judicial forum to enforce arbitration); *Montauk Oil Transp. Corp. v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd.*, 79 F.3d 295 (2d Cir. 1996)(compulsory appearance clause in insurance contract did not supersede arbitration clause where suable clause clearly stated it did not change contractual or substantive rights and merely resolved the issue of personal

1  jurisdiction); *Security Life Ins. Co. v. Hannover Life Reassurance Co.*, 167 F. Supp. 2d 1086 (D.
2  Minn. 2001) (service-of-suit clause is not meant "to limit the arbitrability of claims, but to
3  'obviate potential problems with obtaining jurisdiction over the parties.'" (citing *Old Dominion*
4  *Ins. Co. v. Dependable Reinsurance Co.*, 472 So. 2d 1365, 1368 (Fla. Dist. Ct. App. 1985))).

5        General contract interpretation principles support this interpretation of the contract.
6  "Every insurance contract shall be construed according to the entirety of its terms and conditions
7  as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or
8  application attached to and made a part of the policy." Wash. Rev. Code § 48.15.520 (2012).
9  Both provisions, as part of the contract, should be construed as a whole and given a fair,
10 reasonable and sensible construction. *Sauter ex rel. Sauter v. Houston Cas. Co.*, 276 P.3d 358,
11 359 (Wash. Ct. App. 2012), as corrected (May 21, 2012). The only reasonable interpretation that
12 gives effect to both provisions is the one adopted by numerous courts, that is, the service-of-suit
13 clause provides a judicial avenue to enforce an arbitration award. Arbitration awards are often
14 enforced in courts because the arbiters lack the authority to compel the parties to pay a judgment
15 ordered through arbitration. Therefore, it is necessary to establish from the outset how to enforce
16 the arbitration award and provide an avenue for establishing jurisdiction.

17       The public policy in Washington and at the federal level provides further support for an
18 interpretation that favors arbitration. The Washington Supreme Court stated "[e]ncouraging
19 parties voluntarily to submit their disputes to arbitration is an increasingly important objective in
20 our ever more litigious society." *Godfrey v. Hartford Cas. Ins. Co.*, 142 Wash. 2d 885, 892, 16
21 P.3d 617, 620 (2001). Likewise, the Supreme Court said that "[t]he FAA embodies a clear
22 federal policy in favor of arbitration." *Simula, Inc. v. Autoliv, Inc.,* 175 F.3d 716, 719 (9th Cir.

1999). A strong public policy provides further strength for the interpretation that the contract provisions require arbitration.

b.  *The endorsements are part of the policy and thus the service-of-suit clause is part of the contract as a whole*

The plaintiff's argument that the endorsement and the service-of-suit clause changed the policy and superseded the arbitration clause fails. The plaintiff attempted to distinguish the above authorities by pointing out that in the cited cases, the two clauses appeared together in the same contract. They argued this was not the case here, where the service-of-suit provision was contained in the endorsements and not in the standard agreement. Thus, the plaintiff concluded that the arbitration clause was "clearly and expressly amended by the addition of the 'service-of-suit' endorsements, which specifically allow [plaintiff] the broad right to elect to have all disputes . . . decided in a court of competent jurisdiction." Dkt. 17, p. 4. They further argue that the language in the policy, namely the phrase "THIS ENDORSEMENT CHANGES THE POLICY," proves that the service-of-suit clause changed the arbitration rights in the standard agreement. The plaintiff's claim is without merit.

First, the characterization of the endorsements as a subsequent change to the initial policy is without a basis in reality. It is well established that endorsements are part of the policy and should be construed with the policy as a whole. *Kitsap County v. Allstate Ins. Co.*, 136 Wn.2d 567, 575, 964 P.2d 1173 (1998) (en banc.); *see also Primerica Life Ins. Co. v. Madison*, 114 Wn.App. 364, 367, 57 P.3d 1174 (2002) (a slip or rider attached to a policy and referred to therein as part of the contract and should be construed and harmonized with the other provisions) (*citing Holthe v. Iskowitz*, 31 Wn.2d 533, 541, 197 P.2d 999 (1948)). The ACE policy specifically defines "policy" to mean "collectively, the Declarations, the Application, this Policy form and any endorsements attached hereto." Dkt. 13, Exh. 1, p. 7. Likewise, the Endurance

1  policy states "this Policy with Endorsements shall constitute the contract between the Insured
2  and the Company" and also says "the following forms and endorsements are attached to and are
3  a part of this policy." Dkt. 13, Exh. 1, p. 57; Dkt. 13, Exh. 1, p. 59. The endorsements are part
4  of the entire contract.
5       Also, additional language in the endorsement shows that the substantive right to arbitrate
6  was not altered by the endorsements. For an endorsement to nullify specific section of general
7  policy, the endorsement must specifically refer to sections of main policy to be deleted and
8  expressly state that such sections are nullified or deleted by endorsement. *See Transcontinental*
9  *Ins. Co. v. Washington Public Utilities Districts' Utility System*, 111 Wn.2d 452, 462, 760 P.2d
10 337 (1988); *Nichols v. CNA Ins. Companies*, 57 Wn. App. 397, 788 P.2d 594 (1990). The ACE
11 clause stated "NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER,
12 WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATIONS OF THE
13 POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE
14 STATED", Dkt. 2, Exh. 1, p. 41 (emphasis in original), and the Endurance clause read "[t]his
15 endorsement does not change any other provision of the policy." Dkt. 13, Exh. 1, p. 66. This
16 language shows that the "endorsement changes the policy" warning was limited to the extent that
17 it was expressed. The service-of-suit clauses made no mention of the arbitration rights, and
18 cannot be interpreted to have altered them.
19
   c.   *The service-of-suit clause does not create an ambiguity in the contract*
20
        The plaintiff also argued that, at the least, the language of the two provisions created an
21
   ambiguity, and an ambiguous contract should be construed in favor of the insured. While the
22
   plaintiff is correct in the analysis of the Court's obligation to favor the insured, the Court would
23
   first have to find that an ambiguity exists. Ambiguities are only recognized "when, on its face, it
24

1  is fairly susceptible to two different interpretations, both of which are reasonable." *Quadrant Corp. v. American States Ins. Co.*, 154 Wn. 2d 165, 171, 110 P.3d 733 (2005) (quoting *Weyerhauser Co. v. Commercial Union Ins. Co.*, 142 Wn.2d 654, 666, 15 P.3d 115 (2000)). Ambiguities should not be created where none exist, or constructions adopted that are strained or forced. *Leinum v. Cont'l Cas. Co.*, 2 Wash. App. 233, 237, 469 P.2d 964, 966 (1970) (citing *Lawrence v. Northwest Cas. Co.*, 50 Wash.2d 282, 311 P.2d 670 (1957). The insurance contracts in question can be read in a reasonable way that eliminates any ambiguity. The plaintiff wishes the Court to adopt a construction of the contract that would render the arbitration clause meaningless and essentially strike it from a contract. This is an unreasonable interpretation. The Court finds that the contract is clear and supports arbitration.

## IV. CONCLUSION

The Court interprets the contract in a way that gives effect to all of its provisions and aligns with the federal and state policy that supports arbitration when the parties have contracted for it. Interpreting the service-of-suit clause as a means of enforcing an arbitration award is the only reasonable interpretation. The public policy of enforcing arbitration agreements provides further support. The Court finds that the plaintiffs have failed to show how their facts support a claim upon which relief could be granted. For these reasons, and the reasons stated above, the respondent's Motion to Dismiss is hereby GRANTED and this action is DISMISSED.

DATED August 29, 2012.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE